WALLACE, JUDGE:
On October 26, 1973, at approximately 10:45 p.m. the claimant herein, Grover A. Harmon, was driving his 1968 Ford F250 pickup truck in a southerly direction in Kanawha County, West Virginia on West Virginia State Secondary Road Route 5/6, also known as Woodrum’s Lane. The night was dark and cloudy, the road was dry.
The claimant testified he was traveling at approximately 25 to 30 miles per hour; that he did not travel the road often, the last time being before it was paved.
At a point approximately 4/10 of a mile south of the intersection of West Virginia State Route 5 and West Virginia Secondary Road Route 5/6 or Woodrum’s Lane, the southbound traffic proceeds up a hill turning to the left and then down the hill.
As the claimant made the turn to the left and then proceededthe hill, he suddenly came upon a slip in the road approximately 50 to 100 feet from the turn where a portion of the road reserved for the southbound traffic had fallen away.
When the claimant’s truck struck the slip, he lost control, veered across the road striking the bank on the other side of the road and the truck turned over on its right side.
Trooper J. R. Smith of the West Virginia Department of Public Safety testified that he came upon the accident while answering another call. He found the claimant in his overturned truck an$ assisted him in getting out. The claimant Appeared' to be bruised" and limping.
The trooper further testified that he had seen the slip prior to the accident but the paved portion of the road was not broken the first time he saw it. He testified that he notified the District Office of the Department of Highways in Charleston, West Virginia, of the accident and that signs were needed right away.
*108 At the time of the accident there were no traffic control signs warning of the slip, broken pavement or one way traffic.
Residents who lived in the area of the slip testified that the slip started developing sometime after the road was paved in 1972; that it continued to become worse; that the slip eventually became one to three feet into the lane of traffic and was approximately ten to fifteen feet long. Several residents testified that they had notified the North Charleston Office of the Department of Highways of the condition prior to the accident but nothing was done to correct the condition nor to erect signs warning of the danger.
No testimony was introduced by the respondent to refute the claimant or the claimant’s witnesses as to liability.
The claimant left the accident in the wrecker that removed his truck. He did not seek medical attention until the Monday following the accident at which time he was treated by Dr. Carl J. Roncaglione for injury to the inside of his left knee. It later became necessary to operate on the knee in January, 1974.
The claimant returned to work in June, 1974.
The claimant’s left knee had previously been operated on in September, 1972, and it was again injured in July, 1974. It is difficult to ascertain from the testimony and the evidence the extent of the injury caused by the accident.
The certificate of Dr. Carl J. Roncaglione introduced by the claimant shows no permanent disability anticipated. The respondent had the claimant examined by Dr. H. A. Swart. The written statement of Dr. Swart, introduced without objection, stated there was some disability due to the various injuries and operations on the left knee but hcfwmuch was due to each one was unascertainable.
From the testimony and evidence presented, this Court finds that the claimant was driving at a lawful rate of speed without knowledge or warning of the danger of the slip and is entitled to recover.
The Court further finds that the claimant is entitled to recover $12,039.52 for loss of compensation from his employment, medical expenses, personal property loss, pain and suffering.
Testimony pertaining to damages without supporting proof has not been considered by the Court.
Award of $12,039.52.